**EDINBURG RESTAURANT, INC. et al., Plaintiff,**

v.

**EDINBURG TOWNSHIP, Defendant.**

**No. 5:00CV2879.**

United States District Court, N.D. Ohio, Eastern Division.

Nov. 6, 2001.

**866**

Neal G. Atway, Atway, Cochran & Rafidi, Youngstown. OH, Luke Charles Lirot, Tampa, FL, for plaintiffs.

Abraham Cantor, Concord, OH, W. Scott Fowler, Comstock, Springer & Wilson, Youngstown, OH, Chad E. Murdock, Office of the Prosecuting Attorney, Potage County, Ravenna, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

LIMBERT, United States Magistrate Judge.

Edinburg Township (Defendant) moves this Court for partial summary judgment on Edinburg Restaurant, Inc. and Ellinos, Inc.'s (Plaintiffs) claim that Defendant's zoning resolution is unconstitutional. *See* Electronic Case Filing (ECF) Dkt. # 20. In their memorandum in opposition and supplemental authority filings, Plaintiffs counter and urge the Court to grant summary judgment in their favor. *See* ECF Dkt. # 27, 33.

## I. JURISDICTION

"The Constitution allows federal courts only a limited and special jurisdiction, and powers not given to the federal courts by Congress are reserved to the primary repositories of American judicial power: state courts." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1252 (6th Cir.1996). Article III of the U.S. Constitution sets forth the judicial power of the United States to hear cases, including "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made." U.S. Const. Art. III § 2, cl. 1 (referred to as federal question jurisdiction). Congress chose to statutorily codify the federal question edict in almost precisely the same form as provided for in the Constitution. *See* 28 U.S.C. § 1331("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") Thus, federal courts have the power to hear federal question cases to the fullest extent provided for by the Constitution. *See id.*

The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Toledo Fair Housing Center v. Farmers Ins. Group of Companies*, 61 F.Supp.2d 681, 682 (N.D.Ohio 1999). A plaintiff invokes federal question jurisdiction by presenting a pertinent Federal is-

sue on the face of the complaint. *See Blair v. Source One Mortg. Services Corp.,* 925 F.Supp. 617, 620 (D.Minn.1996). Plaintiffs in the case *sub judice* have clearly presented a federal issue on the face of their complaint. *See* ECF Dkt. # 1. In addition to other federal constitutional claims, Plaintiffs emphasize their right to a declaratory judgment pursuant to 28 U.S.C. § 2201 that Defendants zoning regulations violate the First Amendment of the U.S. Constitution facially and as applied to adult entertainment businesses. *See id.* at 1. Based upon this presentation of a fundamental federal claim in Plaintiffs' complaint, the Court finds that Plaintiffs have properly invoked the jurisdiction of this Court.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs, Edinburg Restaurant, Inc. and Ellinos, Inc., maintain offices and conduct business in Portage County, Ohio. *See* ECF Dkt. # 1 at ¶ 7, 8. Defendant Edinburg Township is a political subdivision in Portage County, Ohio. *See id.* at ¶ 9. Plaintiffs once owned and operated a restaurant/bar called "Bronco's" in Portage County. *See id.* at ¶ 12. Sometime in 2000, Plaintiffs began converting Bronco's into an adult entertainment establishment. *See id.* at ¶ 11, 16.

Plaintiffs allege that in early November, 2000, Defendant verbally warned them that any attempt to open an adult entertainment establishment at the former site of Bronco's would result in swift and immediate sanctions and penalties pursuant to the Edinburg Township Zoning Regulations. *See* ECF Dkt. # 1 at ¶ 16, *and* exhibit 1. Plaintiffs went ahead and opened their adult entertainment establishment

despite Defendant's alleged warnings. *See* ECF Dkt. # 20, exhibit 1 at 3(advertisement for Plaintiffs' adult entertainment establishment dated December 15, 2000 attached to affidavit of Edinburg Township Trustees). Plaintiffs' call their adult entertainment establishment "The Lodge," located in an area of general commercial uses at 3116 State Route 14, Rootstown, Ohio 44272. *See id.* and ECF Dkt. # 1 at ¶ 11. Plaintiffs aver that their adult entertainment establishment offers exotic dancing performances emphasizing human sexuality. *See* ECF Dkt. # 1 at ¶ 10. Not coincidentally, around the time that they opened The Lodge, Plaintiffs launched a legal challenge to Defendant's zoning scheme.

On November 15, 2000, Plaintiffs brought the instant action against Defendant seeking a declaration[1] that Defendant's zoning regulations are unconstitutional, both facially and as applied. *See* ECF Dkt. # 1 at ¶ 1. Plaintiffs also seek injunctive relief enjoining Defendant from enforcing any and all provisions of its adult use legislation and conditional zoning requirements applicable to adult entertainment businesses.[2] *See id.* at ¶ 6. Pursuant to the parties consent, the instant case was transferred to the undersigned's docket for all further proceedings and for entry of judgment. *See* ECF Dkt. # 8.

Plaintiffs claim that Defendant's zoning regulations violate the First, Fourth, Fifth Amendments as applied to the states through the Fourteenth Amendment by imposing conditional use and locational requirements on adult entertainment businesses. *See* ECF Dkt. # 1 at ¶ 4, 5. More specifically, Plaintiffs aver that Defendant's zoning regulations violate the First

---

1. Plaintiffs also brought § 1983 and § 1985 claims based upon the factual allegations contained in the complaint. See ECF Dkt. # 1 at 2.

2. The parties agreed that "The Lodge" could continue to operate pending the outcome of the instant case.

Amendment by acting as prior restraints and allowing for unbridled administrative action. *See id.* On February 20, 2001, Defendant moved this Court for partial summary judgment on Plaintiffs' claim that Defendant's zoning resolution is unconstitutional. *See* ECF Dkt. # 20. On April 16, 2001 and September 18, 2001, Plaintiffs filed a memorandum in opposition and notice of supplemental authority, respectively. *See* ECF Dkt. # 27, 33.

## III. STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the Court. *See Allen v. Wood,* 970 F.Supp. 824, 828 (E.D.Wash.1997). Similarly, the function of summary judgment is to dispose of cases without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *See Schultz v. Newsweek, Inc.,* 668 F.2d 911, 918 (6th Cir.1982). Summary judgment is particularly appropriate in a case challenging the facial constitutionality of a statute. *See Tee & Bee, Inc. v. City of West Allis,* 936 F.Supp. 1479, 1484 (E.D.Wis.1996)(citing *Felix v. Young,* 536 F.2d 1126, 1130, n. 7 (6th Cir.1976)).

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *See Allen,* 970 F.Supp. at 828(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting FED. R. CIV. P. 56(c)). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir.1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* FED. R. CIV. P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *See id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *See id.* at 249, 106 S.Ct. 2505. The Court is not "to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## IV. DEFENDANT'S ZONING REGULATIONS

The Edinburg Township Zoning Regulations (hereinafter referred to as the Resolution), amended in 1998, regulate land uses in Edinburg Township, Ohio. *See* ECF # 1, exhibit 1. The Resolution divides Edinburg township into four districts: R–1 Residential, C–1 Commercial, C–2 Commercial, and I–1 Industrial. *See id.*, exhibit 1 at 2. The resolution specifies permitted buildings, structures and land uses for each district. *See id.*, exhibit 1. Not surprisingly, in terms of numerosity and particularity, the district zoning restrictions heighten as one goes from industrial to commercial to residential districts. *See id.*, exhibit 1 at 3–17.

The Resolution defines adult entertainment establishments by first breaking the term into six sub-parts and then defining each. The six sub-parts are adult arcade, bookstore, cabaret, motion picture theater, theater, and massage parlor. *See* ECF # 1, exhibit 1 at 40–41. Plaintiffs' adult entertainment establishment "The Lodge" falls within the specific definition of an adult cabaret[3] and thus within the broad definition of an adult entertainment establishment under the Resolution. *See* ECF Dkt. # 1, exhibit 1 at 40, *and* ECF Dkt. # 20, exhibit 1 at 3(advertisement for Plaintiffs' adult entertainment establishment dated December 15, 2000 attached to affidavit of Edinburg Township Trustees).

An adult entertainment establishment must obtain a variance, *i.e.* a conditional use permit from the Board of Zoning Appeals, to locate within the boundaries of the Edinburg Township. *See* ECF Dkt. # 1, exhibit 1 at 3–17, 23–32. A conditional use permit acts a variance to the Edinburg Zoning Regulations by allowing land use not otherwise authorized by the particular district zoning regulations. *See id.* Plaintiffs and Defendant agree that the Resolution mandates that adult entertainment establishments obtain a conditional use permit to operate within Edinburg Township. See ECF Dkt. # 20 at 2 and ECF Dkt. # 27 at 2. To obtain a conditional use permit, an adult entertainment establishment must fill out a conditional zoning certificate application and submit it to the Zoning Inspector.[4] *See id.*, exhibit 1 at 23. The Zoning Inspector must transmit the completed application to the Secretary of the Board of Zoning Appeals within seven days after receipt. *See id.* The Resolution describes the procedures and requirements for obtaining a conditional zoning certificate. *See id.* Once submitted by the Zoning Inspector, the Board of Zoning Appeals reviews the proposed development as presented in the submitted

---

**3.** The Edinburg Township Zoning Regulations define Adult Cabaret as, "A night club, bar, restaurant, or similar establishment that regularly features live dancers. The dancers must wear at least 'pasties' and a 'G String'. No nudity is permitted." ECF Dkt. # 1, exhibit 4 at 40.

**4.** The application must contain at a minimum, a complete application form, fee, name, address and phone number of applicant, legal description of property, existing zoning district, description of existing use and proposed conditional use, list of adjoining and contiguous property owners, narrative statements that the proposed use conforms to general and specific standards governing conditional use permitting, site plans, and architectural plans. *See* ECF Dkt. # 1, exhibit 1 at 23–24.

application, plans and materials according to general and specific standards contained in the Resolution. *See id.*, exhibit 1 at 24.

The Board of Zoning Appeals utilizes both general and specific standards to evaluate an adult entertainment establishment's application for a conditional use permit. *See* ECF Dkt. # 1, exhibit 1 at 26("In addition to specified requirements for conditionally permitted uses...the Board of Zoning Appeals shall review the particular facts and circumstances of each proposed use in terms of the following [general] standards."). These general standards, which apply to any applicant for a conditional use permit, include, whether such use:

1. will in fact be a conditional use as established by the involved zoning district;

2. will be in accordance with the general objectives, or with any specific objective, of the Township or County's comprehensive plan or Zoning Resolution;

3. will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that it will not change the essential character of the area;

4. will not be hazardous or disturbing to existing or future neighboring uses;

5. will be served adequately by essential public facilities and services such as highways, street, police and fire protection, drainage structures, refuse disposal, water and sewer systems, and schools;

6. will not create excessive additional requirements at public cost for public facilities and services nor be detrimental to the economic welfare of the community;

7. will not involve conditions of operation detrimental to any persons or property by reason of excessive production of traffic, noise, smoke, fumes, glare or odor;

8. will have vehicular approaches to the property which shall be designed to not create interference with traffic;

9. will not result in the destruction, loss, or damage or a natural, scenic, or historic feature of major importance;

10. will not be detrimental to land values in the general vicinity or the community as a whole;

11. will be in compliance with all applicable laws.

*See* ECF Dkt. # 1, exhibit 1 at 26.

Specific criteria for obtaining a conditional use permit also apply strictly to adult entertainment establishments. These specific criteria in the Resolution restrict adult entertainment establishments to the industrial district of the township, exclusively, and establish distance requirements. *See id.*, exhibit 1 at 32. These distance regulations require an adult entertainment establishment to be five hundred (500) feet setback from the front street, five hundred (500) feet from rear property lines, five hundred (500) feet from side property lines, five hundred (500) feet from any public right-of-way, five hundred (500) feet from any gas lines, one thousand (1,000) feet from all gas wells, oil storage tanks, separator units or compressor stations, and one thousand five hundred (1,500) feet from any public meeting places, including schools, churches and town halls or any other adult entertainment establishment. *See id.*

The Resolution mandates that the Board of Zoning Appeals hold a public hearing no later than thirty (30)days after it receives the completed application for a conditional use permit from the Zoning Inspector. *See* ECF Dkt # 1, exhibit 1 at 23. The Resolution authorizes the Board of Zoning Appeals to submit the proposed development contained in the application to any

entity or person for comments and recommendations. *See id.*, exhibit 1 at 24.

Conversely, the Resolution does not require the Board of Zoning Appeals to render a decision on a conditional zoning certificate application within a specific time frame or by any date certain. *See id.*, exhibit 1 at 25. The Resolution only requires the Board of Zoning Appeals to reduce its decision and findings to writing. *See id.* If the Board of Zoning Appeals approves issuance of a conditional zoning certificate granting an applicant a conditional use permit, it may prescribe certain conditions and safeguards. *See id.* And if it denies an application, the Board of Zoning Appeals shall specify the reasons for disapproval in writing. *See id.* The Resolution provides that the applicant may seek relief through the Court of Common Pleas. *See id.*

In sum, an adult entertainment establishment must apply for a conditional use permit by submitting an application to the Zoning Inspector, who in turn delivers it the Board of Zoning Appeals. The Board of Zoning Appeals applies both the general and specific standards contained in the Resolution to ascertain whether an adult entertainment establishment will be granted a conditional use permit to operate its business within the industrial district of Edinburg Township.[5] The Resolution, however, does not require the Board of Zoning Appeals to render a decision concerning a conditional use permit application within a specific time frame.

## V. LAW AND ANALYSIS

### A. Constitutionality of Resolution

 This Court recognizes that local governments have broad inherent power to zone and control land use, and that courts generally uphold the exercise of such power so long as it is rationally related to legitimate state concerns and does not deprive the owner of an economically viable use of his property. *See Dia v. City of Toledo*, 937 F.Supp. 673, 677 (N.D.Ohio 1996)(citing *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)). Nevertheless, the exercise of zoning power cannot reach past established constitutional boundaries. *See id.* If a zoning ordinance infringes on First Amendment protected activity, it must be narrowly tailored to further a substantial government interest. *See id.*

Federal courts, including the Supreme Court of the United States, have repeatedly held that nude dancing is a form of expression within the outer perimeters of the First Amendment. *J.L. Spoons, Inc. v. City of Brunswick*, 18 F.Supp.2d 775, 777–778 (N.D.Ohio 1998)(citing *e.g., Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)). And, it is well established that licensor laws can regulate such expression as nude dancing, but those laws must contain certain procedural safeguards to ensure that First Amendment rights will not be violated. *See id.*(citing *FW/PBS v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)).

To operate in Edinburg Township an adult entertainment establishment must apply for and obtain a variance, *i.e.* a conditional use permit from the Board of Zoning Appeals. *See* section IV, *supra.* A license is defined as, "A revocable permission to commit some act that would

---

5. Adult entertainment establishments are restricted to the industrial district for Edinburg Township. *See supra*, p. ——.

otherwise be unlawful." BLACKS LAW DICTIONARY 113, (7th ed.1999). The indispensability of the conditional use permit to operate an adult entertainment establishment in Edinburg Township quite clearly fits this variance within the contours of the license definition. *See* section IV, *supra.*

Thus, Defendant's Resolution and its impact upon adult entertainment establishments is properly evaluated by examining the line of cases dealing with the constitutionality of license requirements to first amendment protected activity. The prior restraint doctrine applies to any licensing scheme regulating an entire business that runs the risk of suppressing constitutionally protected expression. *See Dia,* 937 F.Supp. at 677(citing *FW/PBS,* 493 U.S. at 225–26, 110 S.Ct. 596). Under the prior restraint doctrine, such licensing schemes are presumptively unconstitutional and must contain procedural safeguards designed to obviate the dangers of censorship. *See id.*(citing *FW/PBS,* 493 U.S. at 229, 110 S.Ct. 596).

Licensing schemes have been known to suffer from a variety of constitutional infirmities, including the opportunity for delay. *See Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, 1361 (11th Cir. 1999), *cert denied City of Jackonville v. Lady J. Lingerie, Inc.,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000). Licensing ordinances must require prompt decisions; ordinances permitting public officials to effectively deny an application by sitting on it indefinitely are presumptively invalid. *See id.* at 1362(citing *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)). Defendant's Resolution is afflicted with this constitutional infirmity.

The Supreme Court has held that an adult ordinance licensing scheme must contain two procedural safeguards to ensure prompt decision making: (1) licensing officials are mandated to come to prompt decisions; and (2) prompt judicial review must be available to correct erroneous denials. *See FW/PBS v. City of Dallas,* 493 U.S. at 228–230, 110 S.Ct. 596. In terms of prompt decision making, the Resolution does not put any time limit on the Board of Zoning Appeals to grant or deny a conditional use permit. The Board of Zoning Appeals must hold a public hearing no later than thirty (30) days after it receives the completed application for a conditional use permit from the Zoning Inspector. *See* ECF Dkt # 1, exhibit 1 at 23. But nothing in the Resolution itself requires a decision within 30 days, or any other time period, and this failure to require a deadline for decision renders the Resolution unconstitutional as applied to constitutionally protected activities. *See Lady J. Lingerie,* 176 F.3d at 1363.

Defendant argues that the hearing provision is indeed constitutional because the township interprets the hearing provision to mean that the Board of Zoning Appeals must approve or disapprove the application for an conditional use permit at the hearing. *See* ECF Dkt. # 20 at 7. Defendant's argument fails because the Resolution does not contain an express deadline. Where an ordinance does not contain an express time limit, the Court cannot rely on the individuals responsible for enforcing the ordinance to do so in a manner that cures it of constitutional infirmities. *See Dia,* 937 F.Supp. at 677(citing *Chesapeake B & M v. Harford County, Md.,* 58 F.3d 1005, 1011 (4th Cir.1995))(court finds zoning ordinance presumptively unconstitutional because the ordinance at issue contains no express time limit within which body must make its determination to grant a zoning variance to an adult entertainment center).

This Court notes that the Board of Zoning Appeals may submit the conditional use permit application to any entity or

person, including but limited to, the Fire Chief, County Engineer, Regional Planning Commission, Soil and Water Conservation, Health Department, Township Trustees for comments and recommendations. *See* ECF Dkt. # 1, exhibit 1 at 24. This provision provides an apparatus for indefinitely delaying any decision on an adult entertainment establishment application for a zoning variance.[6]

Overall, based upon the Resolution's failure to mandate prompt decisions, this Court holds that Defendant's Resolution regulating zoning in the Edinburg Township is unconstitutional *as applied* to adult entertainment establishments, including the Plaintiffs' establishment. *Compare Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, (11th Cir.1999)(court holds general zoning scheme's procedures for obtaining a variance unconstitutional *as applied* to adult entertainment centers), *with J.L. Spoons, Inc. v. City of Brunswick,* 18 F.Supp.2d 775 (N.D.Ohio 1998)(court holds ordinance specifically directed toward adult entertainment establishments *facially* unconstitutional)(emphasis added).

The Resolution is unconstitutional because it channels all adult entertainment establishments through the exceptions process while giving the Board of Zoning Appeals the discretion to indefinitely delay adult entertainment applications for variances. The Court notes that Defendant can quite easily draft zoning regulations that pass First Amendment muster, yet deal with the societal problems associated adult entertainment establishments. To clarify, the Defendant may still utilize the Resolution to regulate land uses that are not entitled to First Amendment protection.

### B. Permanent Injunction

■ The decision to grant a permanent injunction is within the judicial discretion of the District Court. *See Wayne v. Village of Sebring,* 36 F.3d 517, 531 (6th Cir.1994). A party seeking a permanent injunction must show that the following factors favor issuance of the injunction: (1) the threat of irreparable harm; (2) that this harm outweighs any injury that granting the injunction will inflict on the other party; (3) that the movant has met its burden of prevailing on the merits; and (4) that the public interest favors an injunction. *See Mga Susu, Inc. v. County of Benton,* 853 F.Supp. 1147, 1153–1154 (D.Minn.1994). The Court has already found that Plaintiffs prevail on the merits of their claim. And, the Court also believes that Plaintiffs have demonstrated the three additional factors entitling them to a permanent injunction.

The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Defendant does not dispute that the performances at the "The Lodge" are expressive conduct within the purview of the First Amendment. Denial of a permanent injunction and enforcement of the Resolution therefore would result in irreparable harm to Plaintiffs by depriving them not only of the income and good will generated by their business, but also their right to free speech. The harms to Plaintiffs clearly outweigh any harm to Defendant and there is no evidence that enjoining Defendant from enforcing the Resolution will adversely affect the public in any way. Moreover, permanently enjoining enforce-

---

**6.** While the Resolution states that an applicant may seek judicial review through the state court system, this Court finds it unnecessary to speak on the second prong of the Supreme Court's licensor delay test because the Resolution utterly fails to meet the requirement of prompt decision-making.

ment of an unconstitutional Resolution will benefit the public by preserving First Amendment freedoms. *See Diva's, Inc. v. City of Bangor,* 21 F.Supp.2d 60, 63 (D.Me.,1998)(court issued permanent injunction against city to enjoin enforcement of occupancy permit ordinance because ordinance acted as unconstitutional prior restraint on freedom of speech). Having demonstrated the factors necessary to be entitled to a permanent injunction, the Court hereby issues a permanent injunction enjoining Defendant from enforcing the Resolution against adult entertainment establishments.[7]

### C. Attorneys' Fees

■ In their complaint, based in part upon their § 1983 action, Plaintiffs move for an award of attorneys' fees pursuant to 42 U.S.C. § 1988. The statute provides, in pertinent part, "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title...*the court, in its discretion, may allow the prevailing party,* other than the United States, *a reasonable attorney's fee as part of the costs* " 42 U.S.C. § 1988(emphasis added). The decision to award attorney fees in civil rights action is committed to the discretion of the trial judge. *See Tarter v. Raybuck,* 742 F.2d 977 (6th Cir.1984). While plaintiffs in § 1983 actions should ordinarily recover an attorney's fee unless special circumstances could render such an award unjust, there is an established two-prong test for determining such special circumstances: (1) whether allowing attorney's fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors the denial of fees. *See Gilbrook v. City of Westminster,* 177 F.3d 839 (9th Cir.1999). This Court finds that

awarding attorneys' fees would not further the purposes of § 1988 and the balance of equities favors the denial of fees. An examination of the docket reveals that, other than the complaint and summary judgment filings, there has been little activity in the instant case, including next to no discovery.

### VI. CONCLUSION

For the foregoing reasons, this Court denies Defendant's motion for partial summary judgment. The Court holds that Defendant's Resolution regulating zoning in the Edinburg Township is unconstitutional *as applied* to adult entertainment establishments, including Plaintiffs' establishment because it fails to mandate prompt decisions. The Court also issues a permanent injunction enjoining Defendant from enforcing the Resolution against adult entertainment establishments. Lastly, the Court, in its sound discretion, denies Plaintiffs' request for attorneys' fees.

IT IS SO ORDERED.

### JUDGMENT ENTRY

This matter is before the Court upon Defendant's Motion for Partial Summary Judgment and Plaintiffs' opposition memorandum and supplemental authority filing where they urge the Court to grant summary judgment in their favor. *See* ECF Dkt. # 20, 27, 33. For the reasons set forth in the Memorandum Opinion and Order issued in connection with the Defendant's Motion for Partial Summary Judgment, which is incorporated herein by reference, this Court denies Defendant's Motion for Partial Summary Judgment. The Court finds that there exists no genuine issues of material fact and that Plain-

---

7. The Court deems Plaintiffs' motion to strike Defendant's affidavit attached to Defendant's motion for summary judgment moot based upon the foregoing holding in this Memorandum Opinion and Order. *See* ECF Dkt. # 29.

tiffs are entitled to judgment as a matter of law.

The Court holds that Defendant's Resolution regulating zoning in the Edinburg Township is unconstitutional *as applied* to adult entertainment establishments, including Plaintiffs' establishment because it fails to mandate prompt decisions. The Court also issues a permanent injunction enjoining Defendant from enforcing the Resolution against adult entertainment establishments. Lastly, the Court, in its sound discretion, denies Plaintiffs' request for attorneys' fees. Therefore, **JUDGMENT** is granted in favor of Plaintiff.

IT IS SO ORDERED.